Okay, the next case before the court is IN RE PACKARD, case number 13-1204, and do I have your name on the record, Mr. Tompros? Tompros. That's right, Your Honor. Okay, that you have reserved three minutes for rebuttal? Yes, Your Honor. Okay. I was going to say good morning, but instead, good afternoon. And may it please the Court, my name is Louis Tompros, and along with my colleague, Prashantho Murkheshi, I represent Thomas Packard, who is the named inventor of the patent application on appeal. In evaluating Mr. Packard's application, the Patent Trial and Appeal Board applied the wrong standard for indefiniteness and the wrong standard for written description. On both issues, the Board contradicted this Court's interpretation of Section 112 and imposed requirements for patentability on Mr. Packard's application that have no basis in the Patent Act. On indefiniteness, the Board, in this case specifically, said, quote, a claim is indefinite when it contains words or phrases whose meaning is unclear, period. That is not law. This Court has never held that a claim fails to satisfy Section 112 simply by being, quote, unclear. Thank you. Can I ask you, why isn't the Board's decision on indefiniteness supportable, sufficiently supportable on the ground that when there was an examiner rejection saying, in effect, I can't make heads or tails of a bunch of this, that essentially no response came back and that, at a minimum, you have an obligation, he had an obligation maybe not to do the elaborate job you did in your brief to explain everything, but something? Sure. Your Honor, a response did come back, and Mr. Packard pointed to, with respect to each of the specific articulated allegedly unclear terms, Mr. Packard pointed to an explanation. A good example is with respect to the term flat plain change holding card. What the examiner said and what the Board held was that there can be no such thing as a flat plain card that includes raised surfaces, and what Mr. Packard said quite clearly in response was that his card was intended to be substantially flat but also include these raised surfaces. And that that is fully consistent with the way that a person of skill in the art understands the word flat, and it's fully consistent with his specification with the drawing. Is it nevertheless the case, and maybe I'm not remembering what the Board said, I thought that the Board indicated maybe that he might have provided an explanation as to some of the problems pointed out by the examiner, but that was not a short list of problems and there were a bunch of problems that he essentially provided no explanation for. I respectfully disagree, Your Honor, and don't think that that's what the Board was basing its decision on, that is a failure to adequately respond. The Board was basing its decision on affirming the examiner's determination that the terms actually were not understandable, and you're correct, Your Honor, the examiner did list a litany of terms that there was the flat claim term was the one that actually applied to all of the claims, and then there were a variety of terms for which the examiner said that the rejection for indefiniteness was based on the lack of an antecedent basis. And what Mr. Packard did was said, no, these terms are discussed in the specification, which is the description of what the antecedent basis rule requires even when it applies. Now, the vast majority of the terms that the examiner cited in the antecedent basis rule 4 were not even terms to which the rule applies as we lay out in our brief. Right, but I guess I just want to keep focusing on this. At A14, this is the paragraph, you know the paragraph which the Board says, the appellant argues in response that all the claim structures supported by the disclosure which examiners decided were new matters should be canceled with regard to examples of indefinite language pointed out by the examiner. The appellant counters by stating and gives the flat plain card example. And then the Board says, no other comments directly on point have been made by the appellant with regard to the general and specific examples set forth by the examiner in the final rejection. Why, again, is that finding not sufficient to affirm? Your Honor, I think quite candidly that was not something that was addressed, nothing to be a full basis of the basis on which the Board was actually citing the case. Indefiniteness is an issue of law that's reviewed de novo as it is. So there wasn't, as we understood it, a claim of waiver here. We can go back and look at exactly what Mr. Packard said in his response to the objections. There is more, there's significantly more than just the one sentence that's quoted there. I can't... Meaning since that wasn't the precise basis for the Board's decision, we would have a Chenery problem if we tried to hook our decision on that? Well, there may be a Chenery problem, but I think that my response is actually somewhat different, which is that I'm not sure that the Board's, that that is a, that's not a factual finding by the Board. It's just the Board describing what the record shows and what was argued below. I think that the Board did not, was not, it was not correct in saying that there was no comment, no other comment on point with respect to the other rejections. They may be right with respect to the flat plain rejection, but that is a response to the flat plain rejection. So I think that that was not in the discussion of the Board's actual, its actual determination on each of the indefiniteness rejections. It wasn't relying on any kind of a waiver. It certainly didn't seem to us, and it's not something that the solicitors argued here either. Mr. Kampos, there really are two different issues in this case, as I see it. One of them is the one we were just discussing, which is whether standard applied by the Board, the facts meet the standard. Let me go back to your opening comment, which was you said the Board applied the wrong law. That's not the law. On page 14, page 8 of the Board's opinion, the Board said, a claim is indefinite when it contains words or phrases whose meaning is unclear. I take it they got that from their Miyazaki case, basically, in their following that as Board policy. You said that that's not the law. Well, I can't find any case of this Court, anyway, that has said that's not the law. On the other hand, I haven't found a case that says that is the law. So it seems if I'm right, and I'm sure I'll hear from the government as to whether I'm right or not, then we have a fundamental question of law in front of us, which is what is the appropriate standard for the Board to apply? I gather from your brief that you think we should apply the insoluble ambiguity standard, which we don't even understand, and perhaps the Board would understand it better if we impose that on them. But on the other hand, doesn't the Board play a different role in all of this? Sure, Your Honor. I think that there are multiple parts to that. And let me begin this way. This Court has expressly rejected the concept that a claim is ambiguous if it contains terms that are unclear. That's exactly what... We expressly rejected that in terms of our standard of review. That appears to be correct, although I think... Our standard of review for issued patents. For issued patents, yes, I'm sorry. Our standard, what we apply to issued patents. I think that's perhaps arguable, but we won't argue it here. Fair enough, Your Honor. The issue immediately before us is not how do we deal with issued patents. The issue before us is how should the Board deal with applied for patents. You're correct, Your Honor, and I think there are three parts to my response to that. The first is that this Court has in all of its decisions that are captioned in Ray, that is all of its indefinite decisions that came out of the Board, including the in Ray Walmerdam case, which is one of the earliest ones along this line, has applied and cited this Court's district court decisions on indefiniteness. So, for example, in the Walmerdam case, this Court cites what it calls the Amgen Rule, which is a district court appeal to this Court applying the indefiniteness standard. That happens consistently throughout each of this Court's in Ray cases. In each case where this Court is reviewing something coming out of the patent office, it applies the same one. There's Walmerdam that cites Amgen. And interestingly enough, the Walmerdam case was one in which this Court found that the claim was not indefinite. The claim was not indefinite. So had there been a lower standard, an easier to satisfy indefiniteness standard at the Board in Walmerdam, something different than what this Court was applying in its district court cases. What about in Ray Morris? In Ray Morris. It's not one that I know that I'm familiar with, Your Honor. Which one? Where we said, quote, it would be inconsistent with the role assigned to the PTO in issuing a patent to require it to interpret claims in the same manner as judges who post issuance operate under the assumption the patent is valid. I understand, Your Honor. And in Ray Morris deals not with an issue of indefiniteness, but with an issue of claim construction and the rule that this Court has imposed differently on the patent office, the broadest reasonable construction rule. Now the office argues that the broadest reasonable construction rule supports its different indefiniteness standard. But in fact, it contradicts it. In Miyazaki, the Miyazaki standard for indefiniteness that the Board applies says that a claim is indefinite if it is amenable to two or more plausible constructions, multiple plausible constructions. Now the broadest reasonable construction rule of Morris says very clearly that the patent office, when there are different constructions, the patent office is supposed to apply the broadest reasonable one. That, by definition, requires there to be multiple plausible constructions. So every time the broadest reasonable construction rule comes into play, there must be multiple plausible constructions. According to Miyazaki, as soon as there are multiple plausible constructions, the claim is indefinite. Can I ask you, what do you do about the sentence in Exxon that says if the case were before an examiner, the examiner might well be justified in demanding that the applicant, you know the sentence. Right, I do know the sentence. And what Exxon, as I understand it, is saying there is not saying that the standard is different, but requiring some degree of clarity in the patent prosecution process. And that actually goes to Your Honor's first point about clarification. That is, when there is something where the examiner perceives a problem. What would be the basis for the demand if it isn't that the claim at issue shouldn't issue because it violates 112? The board and the patent office actually has a very specific section of the MPEP that deals with exactly this issue. It says if the examiner wants the applicant to improve the clarity or precision of the language used, the examiner should suggest that improved language to the applicant and encourage the applicant to amend the claim. That's MPEP section 2173. So that's about suggesting, and suggestions are really very gentle. The sentence in Exxon says demand, and I don't know how that could be the case unless underlying it was the notion that at the application stage, indefiniteness might actually be a different standard. There is a difference because of the broadest reasonable construction standard, and there is some force to that demand. So if, for example, in this case, we have the flat plain card. In this case, to make sure that there is clarity, what the examiner should have done is given the broadest reasonable construction. That is to say the flat plain can have structures extending from it. And then if there were prior art references that either anticipated or rendered the patent obvious, reject them on the basis of that broadest reasonable construction. But that's not what the sentence in Exxon is about. The sentence in Exxon is about a demanding greater clarity because it says nothing about prior art, because the absence of that greater degree of clarity is a basis for demand. Your Honor, respectfully, that sentence in Exxon stems from the Supreme Court's discussion of indefiniteness, which is really all about describing and distinguishing the patent from what came before and what came later. And the problem is really one ultimately of unworkability if the standard is really as low as unclear or as low as Miyazaki. Why is that unworkable? Here's my puzzle. We spend an enormous amount of time up here getting cases in which we read the claims and there has been 10, 15 days of litigation in the trial court trying to figure out what could that claim possibly mean. Very rarely do we get a patent in which the applicant has bothered to put in a section called definitions. And not so rarely do we find that the terms of the claim are on their face, ambiguous and unclear. And we ask ourselves, why does the patent office let those kinds of patents out? And I've asked myself that regularly for 20 years. It looks to me like the patent office may finally be coming to grips with that problem and saying to the applicants, if you give us a claim that could be read this way or that way, we're not going to accept that. You've got to be somewhat more clear and precise. Why bother to do that? And that's because you're not entitled to your claim unless you're giving notice to the public as to what the meets and boundaries, i.e. where the edges are for what you're claiming. And it seems to me that the court, I'll be honest with you, I think the court sort of boxed itself into a hole when it came up with insolubly ambiguous because the statute for one doesn't even suggest that. The statute's quite clear that claims have to be clear. And we don't require that. Perhaps we should, perhaps we shouldn't. That issue is not now before us. But if the PTO wants to insist that claims be clear, what's wrong with that? Your Honor, number one, what's wrong with it is that this court has interpreted Section 112. And Section 112 is the same Section 112 when it's in front of the patent office or when it's in front of this court. We've interpreted it for our own purposes in dealing with cases that come before us from suits in the district court where there is a presumption of validity. There's no presumption of validity in an application. That's true, Your Honor. And the presumption of validity does give rise under Section 280, is applicable under Section 282 and it gives rise to the clear and convincing burden of proof. That clear and convincing burden of proof applies to every condition for patentability. Section 101, anticipation, obviousness, written description, enablement, all of those things have to be proven by clear and convincing evidence in front of the district court. Just like indefiniteness, all of those things have a lower burden. One way to think about the particular issue of indefiniteness is language is always capable of being made more precise. So any judgment about what is unduly unclear has to take account of circumstances. Why shouldn't it be that one particular circumstance doesn't bear on how much increased precision to demand and that is whether the applicant or whether the patentee is in a position to do something about it, which after issuance, not so much. Before issuance, yes. Relatively low cost before issuance. You're right, Your Honor. We're both correct that there is a difference in cost and that there is some difference in positioning. A few responses to that. Number one, this post-issuance, pre-issuance issue is a problem now because of post-grant review and covered business method patent review. There will be numerous circumstances where the board will apply its own standard for indefiniteness in those post-grant proceedings before the board where the patentee could in theory amend, but if the patentee does amend, will be giving up intervening rights for all of the period between the original issuance and the issuance of the reexamined patent. So it is a significant problem. You're anticipating the cases that will come before us in the next three to five years and we're looking forward to those, but let's go back to the current. Let me ask you a question before I make you sit down because we're way past your time. Thank you, Your Honor. My question is, even assuming that we would adopt or accept a lesser standard for indefiniteness at the prosecution stage than we would allow at all post-issuance, for instance, say, would you still be able to argue that the standard that was used here and the way it was employed here was wrong? Yes. The standard as applied here, even if the standard were unclear, even if the standard were the Miyazaki standard of two plausible constructions, these claims are not indefinite under any standard. The only indefiniteness rejection that applies to all of them is the concept that there is no such thing as a flat plain structure that includes raised surfaces. The patent office has issued flat plain card patents that have raised surfaces. This court has construed a flat wall to include fins and a number of other raised surfaces. There's nothing ambiguous about using the word flat and then specifically claiming and specifically describing raised elements of that flat surface, just like a flat screen TV, just like the flat change card here that has the rose. So it's abundantly clear if you actually read the specification, in light of the specification, that the flat plain surface here has these raised surfaces, has these raised edges, and that's why this is not indefinite under any rule. Thank you, Your Honor. We will restore your three minutes of reference. Thank you. Good afternoon. May it please the Court. Consider for just a moment the impact of the argument that Packard is making in this case. There's no presumption of validity here. There's no patent in this case. And Packard could have easily rectified any problems with his claim during prosecution. But if Packard is correct, the USPTO, the agency that reads and issues every single claim and every single patent, and the agency that is increasingly blamed for the lack of clarity in patents that are arguably of low quality, we are, if he's right, totally unable to fix this problem. Have we ever said in a panel opinion, in an in-ray case in a panel opinion, that the insolubly ambiguous standard applies? No. In fact, this Court has not had occasion that we could find to review an indefiniteness rejection from the agency post-Exxon. Exxon is a 2001 case. I believe In Re Vlets is a case from the 90s, same with In Re Warmerdam. The insolubly ambiguous label was first coined by this Court in 2001, and it wasn't a re-characterization of indefiniteness. Okay, so my question is, you don't believe we'd have a problem as a panel if we decided to be sympathetic to the notion that a pre-issuance standard might be different than a post-issuance standard? I agree with that, Your Honor. I don't think that there are two separate standards. I think the standard for definiteness is, and has always been, whether a claim gives people in the art... Right, but as you know, that's a somewhat heavier lift. I know that you've been suggesting, at least since last year, to, I don't know what the right term is, re-characterize some of the language, the insolubly unambiguous or insolubly ambiguous language, as really amounting to something different, including in your invitation filing and retractable in the Supreme Court. But that presents a different issue for our panel than the specific issue Judge O'Malley asked about. Fair enough, Your Honor, and I would also direct the Court's attention to the United States' filing in the Aplera Supreme Court case, which actually gets into more detail about this and actually goes through every use of insolubly ambiguous and ties it, in fact... No, no, I know, but the point is... I'll argue that we tend to ignore our prior panel opinions when we want to, and now you're inviting us to do that, and I don't think we can do that. Your Honor, I'm not inviting you to do that, and let me try to be clear about this. In Exxon, the issue was preserving validity. That was the concern. That's what the Court was talking about there, and that's what every panel is talking about when they say we have to try as we can to construe this claim because the claim is issued, it has a presumption of validity, and we need to preserve its validity. So even if the construction process is difficult, we have to go through it and... Well, it's not just preserving validity, but it's because clear and convincing evidence of invalidity has to be shown. Well, Your Honor, I guess there's some question as to whether that would be true for invalidity under Section 112B, 1122nd, which is, of course, an issue of law. Section 112 is, after all, a component of claim construction, and as N. Ray Morris said, and we believe N. Ray Morris is still the law of this Court, the USPTO's claim construction should be reviewed to see if they are reasonable. Well, here, the claim construction process was truncated. We never got to a claim construction because we never got to the point of knowing what this claim means. Now, what Packard has done is he has gone through quite ably by taking snippets of his claim, building a patchwork of those phrases, and demonstrating, arguably so, that his preferred embodiment is within the scope of this claim. Well, hold on just a minute. Mr. Kelly, when the examiner engages in a dialogue with the applicant, as has happened here, and says, I can't understand what your claim really means, and I think it's too indefinite or ambiguous, isn't the examiner anticipating or even perhaps applying 112B? Isn't that what the issue is about, that claims have to have certain clarity? Isn't that where we are? Yes. In fact, the only time an examiner can compel an applicant to fix a problem in the claim is when a 112 second rejection has been made. And, you know, I'm curious about something. We all talk about indefiniteness. Do you remember where in the statute the word indefiniteness appears? I don't know that it's in section 112B. It doesn't appear. Particularly in distinctly claimed subjects. Indefiniteness apparently became shorthand for the phrases that are included in 112B, when I use B because that's the, isn't that right? That's exactly right. I think that's the terminology. Indefiniteness apparently came from somewhere and is shorthand for the actual phrases in the statute. But the phrases in the statute are quite, if you will, clear and rather explicit. So the question before us is, I take it, whether you can apply your standard, the Miziaki standard, even though we don't use a similar standard as applied to district courts at the present time. And the second question is the one I think the judge raised earlier, which is even under your standard, do your facts hold up? Could your facts hold up for some of your claims but not for all of them? Well, I'll start at the beginning of your question, which is whether or not the Miziaki standard can be adopted by this court. As applicable to you. As applicable to the agency. Okay, fair enough. I don't believe and we don't believe that the Miziaki, quote, standard, if it can be characterized as a standard, is even implicated in this case. Miziaki was dealing not with indefiniteness generally or Section 112 generally, but the issue of ambiguity, the issue of two plausible constructions and should the examiner just take a plausible construction or not. And, in fact, that bumps right up against ERI. And it bumps up not in the way my opposing counsel has explained, but in exactly the other way. If we have to take the broadest reasonable construction and there are two different constructions, then we cannot preserve the claim for validity. We're ultimately going to take a claim and make it invalid. So what we do under Miziaki is for the purposes of examining the prior art, for the purposes of determining what the possible extent of that claim is, for what we should search for, we absolutely take the broadest construction that's reasonable. But if there are two constructions, we at the same time issue a 112-second paragraph rejection. And we don't think there's anything inconsistent about that. So, in other words, we take the broader construction to ensure patentability under the prior art components of Title 35, but we also write the 112 rejection. But to go back to your question, Judge Plager, I don't think that this case triggers the Miziaki issue because in this case there are not two plausible constructions of this claim. So I don't think it's a matter of applying that here. Well, my problem with the way the board's analysis was done and as I understand the arguments in the brief is that you're not just saying that we need to look and see if there are more than one plausible construction, but you're saying we should decide that without looking at the written description, without looking at any of the prosecution history. And my problem with that is that that clearly is not the law and never has been the law, even for examiner's analyses. How can you divorce your assessment of what the words mean unless you look at the specification? What if they've got a definitional section in there? We can't divorce it and we are not suggesting that it should be and we don't believe the board did so here. If they had come back in and said, oh, you're reading planar wrong. Look at page four of our specification where planar is used. It's used in a different way. We would have a very different case here. In fact, planar is used in the specification and it's used entirely with respect to the thin card. It's not used to the claim, I'm sorry, to the coin holder as a whole. So to the extent that planar is even in the specification, it's used in a way that contributes to the indefiniteness, not resolves it. But wouldn't the construction, to the extent we're talking about alternative construction, don't they both have to be reasonable in context? I mean, the notion that somehow this card could be attached to a tree seemed a little silly to me. You have to look at the context of the patent that you're talking about in terms of assessing whether there are alternative constructions. Your Honor, the issue of whether it can be attached to a tree or any other surface or rock, Packard injected that into this case. Packard gave the tree example. Packard gave the rock example. The examiner responded to it quite logically and said, you know what? You don't even give an example of any surface at all. So as to your kind of outrageous examples, I don't know why those wouldn't be within the scope of the claim either, within the scope of the term surface. In fact, the prior art cited in this case had a coin holder that was attached to a surface, the Hoffman reference. Not to a tree, though. Not to a tree, to a pager. Not to a wall either, not to a purse either, to a pager. The prior art in this case, and now we're talking more about the written description issue, the prior art in this case used the same words he used. It talked about coin holders getting put in wallets, getting put in purses, and he amended around that prior art. He amended around it by saying, okay, well, ours is attached to the purse. Ours is attached to the coin holder. That's when he got the written description rejection, and that's when he tried to support it with a brand-new description, with brand-new figures, and he just can't do that. Can I just go back to the question that I began this argument with? Do you understand the board's decision to be separately supportable on the ground that there plainly was enough for the, back to indefinites, plainly was enough for the examiner to say, here are a significant number of things I just cannot understand. That triggered a burden for him to come back and say, here is what they mean, and with one exception, he didn't. And so at that point, the board was entitled to say, this is indefinite. The board was entitled to make a decision like that. In other words, the examiner makes a prima facie case. The applicant comes in and doesn't fully respond to a lot of the bases, and the board says, well, like an appellate court often does, you haven't even given us the other side, so we affirm for that reason. And this court decided something like that in the written description context in one of the highest cases? Yes, exactly, Your Honor. I think, though, the board went farther than that. The board got into the indefiniteness requirement and said, okay, let's talk about what are the bases for the indefiniteness, and we'll pick two of them. And they were two very strong ones, and they said, okay, we agree it's indefinite. So we don't have simply a waiver issue or a prima facie case that was unrebutted. We have the board, as they should properly do, examine the 112 issue itself and give us their own review of it and their own decision. And we think the decision is supportable under any standard. Yes, this claim is insoluble. Can I ask you a bigger picture question? The examination process is not supposed to be an adversarial one, is it? No. Well, it shouldn't be completely adversarial, but we do have attorneys and patent examiners, and they frequently are disagreeing on things, and it tends to get adversarial sometimes. But it's really not supposed to be, right? It's an ex parte procedure. And in this case, we had a pro se applicant, did we not? We did. It did seem that there was not an effort to sort of explain things to the applicant or help them to understand what it is they needed to do. And that seemed at odds with what I have always understood the examiner's responsibility to be. Your Honor, when an examiner is dealing with a pro se applicant, the examiner is trained, in fact, and the NPEP discusses this, to reach out and help the pro se applicant at times get to something that's patentable when the examiner identifies it. The problem in this case, because, Your Honor, I noticed the same issue. The problem in this case is that the examiner, as far as we can tell, saw nothing even close to patentable. The prior art references are remarkably similar to this application, if not identical in some places. He claimed it was attached to a purse. The examiner gave him one where it was attached to the purse. So, yes, the examiner did not reach out and say, here's what you need to do. Amend your claim this way to amend your claim that way. But, frankly, I don't know how that would have assisted this particular pro se applicant, rather than sort of leading them on to now writing a definite claim that can simply be more easily rejected under the remarkably close prior art. In veterans law. The pattern that's going on, that's one of the reasons I raise it as a complaint. Well, Your Honor, it's unusual to deal with pro se applicants. It's something that some examiners never come across. It's something they come across sometimes. I would hope that if this invention were clearly patentable and there was no prior art even close, the examiner would have reached out, called up the applicant and said, hey, you know what, you keep ignoring my rejection. Here's what you should do. Just fix these two words. We don't have that flavor of a case here. Mr. Kelly, just to follow up on Judge O'Malley's question, in veterans law we have an express statute which obligates the Veterans Administration to assist veteran applicants who are applying for benefits. And we recently had a case in which we had to sort of smack the VA around the head and shoulders for failing to do that or trying not to do it. I don't know of any express statute in your case that requires you to do that. Do you? No, Your Honor. There isn't one. And I would point out another difference with the duty to assist in this court's veterans cases that differs from here. But I believe the same statute also prohibits the use of an attorney during the process where there is a duty to assist and that attorneys in veterans cases come in sort of later in the game. And the reason for that is to basically let veterans and the VA deal together as amicably as possible. In fact, before the PTO it's not anything like that. Almost every patent applicant has a patent attorney, and there's good reason for that. It's because an applicant, even when we're assisting them, we can't be their legal representative. We don't know the business that they work in. We don't know what their competitors are doing. They need patent attorneys to help them draft claims, claims that are clear and claims that are patentable and claims that give them the type of scope of protection that will help them market their invention. I'm sure the patent bar loves to hear you say that. Well, and you know, Your Honor, this is an example of a case where a patent attorney could have resolved these issues perhaps more quickly. At least the non-priority issues. At least the non-priority issues, exactly. When there are a lack of antecedent basis, when something is referred to as being a claim and then absolutely has to have things extending up from the claim. A patent attorney could probably have written a claim to get around those issues to recite that it's only the substrate that's planar, that there's pieces rising up out of it. I mean, you can imagine any number of claims that could have been written. But instead we have an applicant who folded his arms and counsel now who says that we're powerless to improve patent quality when it comes to clarity in any way. And for that reason we would have to support a firm. Thank you. I gave you a couple minutes to make up for the extra minutes you got. Thank you, Your Honor. You're welcome. Thank you, Your Honor. Mr. Tomprose. Go ahead, Your Honor. Let me interrupt you for just a second. There's something about this whole case that puzzles me. I realize it was pro sec. I read the claims in this case, and I can't make head or tail out of them, to be perfectly honest with you. And if they came before us on an appeal from a district court, I would wonder how anyone in that district court could possibly know when an infringement of that claim actually occurred. So I'm puzzled as to why your client didn't simply say, oops, I got a problem here. Let's start over and I'll, you know, clean it up and I'll have a nice clean claim and then I don't have to go to Wilmer Cutler to get an appeal at the court of appeal. I mean, this case, well, let me add one other thing. This is not the ideal case for the government to try to establish its standard of review, but you raised it and we're going to have to decide it. But the facts, it seems to me, in your case, the claim is, come on, let's face it. Your Honor, I respectfully disagree, and I think if you draw, if you read the specification and then draw out each of the structures identified in the claim, it's very clear what connects to what, what goes where, and each piece is clear. I secondarily say, just to be clear, that the indefinite rejection is the only one that actually applies to all the claims. Most of them apply just to Claim 28. The only one that applies to all the claims is this flat plain, and that is one that I, again, submit is quite clear under any standard. Flat does not mean perfectly flat. It can have things extending from it. But as to why this applicant couldn't have just amended, the answer is because the examiner didn't just reject this for indefiniteness. Had he, you're right. The right answer would have been just clean it up. But he rejected it for indefiniteness, obviousness, and lack of written description. Those are not things that you can just clean up. On the obviousness rejection, Mr. Kelly said there's nothing even close to patentable. Well, there was no anticipatory reference ever identified. The obviousness for any claim, the obviousness rejections were rejected by the Board because they were, the Board determined that these things were not sufficiently connected and sufficiently identified as connected to be obvious. I thought the Board just said that the examiner basically didn't explain it. Well, the examiner didn't explain it. That's right. The examiner's explanation of these things was not sufficient to make that a case of obviousness. It's pretty hard to look at the pictures in these prior art and say, this is what, now that I understand that Mr. Packard's claim, this is what's being claimed. I respectfully disagree, Your Honor. I think that is ultimately an issue for the Board and not for the Court. Those references don't teach the connection to the wallet, billfold, or purse. All of them, in fact, as I understand it, claim a card inside a pocket. And that's something that there is no connection or connectivity to in the way that the wallet, billfold, and purse do. And then just finally, there is a post-Exxon in Ray case that this Court has where it has relied on its district court cases. And the case is in Ray, Iowa right now. This was the case where there was an indefinite rejection this Court made to Esponte. It cited Finisar, which is a district court case. It cited all voice. It actually quoted Finisar. Iowama, in Ray, Iowama, quotes Finisar to say, quote, this Court does not impose a lofty standard in indefinite in this case. So I would submit, Your Honor, that the pre or post-Exxon, pre or post-Miyazaki, it is abundantly clear that this Court has one interpretation of Section 112. It may be. What's the site for that case? Sure, it is 656 Federal 3rd, 1293, in Ray, Iowama. It's a case where this Court issued Esponte indefinite rejection based on a board determination. And it cites the district court case. So there's the Iowama case. So the Court, this Court, found it indefinite? That is correct, Your Honor. That's not federal. Well, I agree, Your Honor, except in so far as what this Court did was applied the indefinite. No, no, I understand the argument. But something that flunks an even lesser standard is going to flunk a higher standard. I agree with that. But nonetheless, the Court applied and cited the standard from the district court cases. And I do think this, Judge Plague, your concurrence to a dissent from denial in the Enzo case suggests that it's time to revisit indefiniteness. And it may very well be that it is time to revisit indefiniteness more broadly and more generally. It may very well be that insolubly ambiguous is not the right standard, but we would submit that number one, this is not a place where inconsistent standards are applicable for all the reasons we've cited in our brief. There's one section 112, and it should apply at both the Patent Office in this Court and in the district courts. And number two, that the standard, whatever it is, should not be the Miyazaki standard, where as long as you can imagine two possible constructions, which is every claim in every patent in the world that has ever issued, then the claim is indefinite. So it may be time to revisit, but it is not time for the Patent Office's standard. And under any standard, these claims are not indefinite. All right, thank you. Cases will be submitted. Court is adjourned.